25-CV-3286-HG-JRC

# United States District Court

## Eastern District of New York

| | | |
|---|---|---|
| Changhe Cheng, | *Plaintiff,* | |
|     *-against-* | | No. |
| Flushing Hospital and Medical Center, City of New York, Dajin Realty, Inc. and NYPD Officers John Does 1-5, | *Defendants.* | |

# CIVIL COMPLAINT

### *Jury Trial Demanded*

/s/ Changhe Cheng (*Pro Se*)

140-22 45th Ave, FL2, Flushing, NY 11355

Phone: 212-222-6688

Email: lingxi@gmail.com

# TABLE OF CONTENTS

*JURISDICTION AND VENUE* ........................................................................................... *1*

*PARTIES* ......................................................................................................................... *2*

*STATEMENT OF FACTS* ................................................................................................... *3*

*CAUSES OF ACTION* ..................................................................................................... *12*

    COUNT I: UNLAWFUL ENTRY UNDER 42 U.S.C. § 1983 ............................................. 12

    COUNT II: FALSE ARREST / UNLAWFUL SEIZURE UNDER 42 U.S.C. § 1983 ........................ 12

    COUNT III: EXCESSIVE FORCE UNDER 42 U.S.C. § 1983 ............................................. 13

    COUNT IV: FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983 .................................... 14

    COUNT V: MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983 ................................. 14

    COUNT VI: MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (Monell Claim) ........................ 15

    COUNT VII: VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS .......................................................................................................... 16

    COUNT VIII: MEDICAL MALPRACTICE ......................................................................... 17

    COUNT IX: BREACH OF FIDUCIARY DUTY .................................................................. 17

    COUNT X: WRONGFUL AND FORCIBLE EVICTION (RPAPL § 853) .............................. 18

    COUNT XI: MALICIOUS PROSECUTION ......................................................................... 19

    COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ..................................... 19

    COUNT XIII: PRIMA FACIE TORT ................................................................................. 20

*PRAYER FOR RELIEF* .................................................................................................. *20*

## JURISDICTION AND VENUE

1       This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

("Federal Question Jurisdiction") because Plaintiff's claims for false arrest, malicious

prosecution, excessive force, and municipal liability arise under the Constitution and laws of the

United States, specifically 42 U.S.C. § 1983.

2       This Court has supplemental jurisdiction over Plaintiff's state-law claims against all

Defendants, including but not limited to medical malpractice, breach of fiduciary duty, wrongful

eviction, and malicious prosecution under New York law, pursuant to 28 U.S.C. § 1367. These

state-law claims are so related to the federal claims that they form part of the same case or

controversy, as they all arise from the same common nucleus of operative facts surrounding the

events of March 2024.

3       Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)

because a substantial part of the events or omissions giving rise to the claims occurred within this

judicial district, specifically in Queens County, New York.

4       Plaintiff has served a Notice of Claim upon the City of New York within ninety (90) days

of the incidents giving rise to his claims, in accordance with General Municipal Law § 50-e. The

50-h hearing was conducted on October 11, 2024. More than thirty (30) days have elapsed since

the service of said Notice of Claim, and the City has not adjusted or settled Plaintiff's claims.

Plaintiff has therefore satisfied all statutory conditions precedent to commencing this action

against the City of New York, including the commencement of this action within one year and

ninety days of the claim's accrual, as required by General Municipal Law § 50-i.

1

# PARTIES

5       Plaintiff Changhe Cheng is a 71-year-old individual, with multiple disabilities and receiving home care, previously residing at 13231 41 Ave, Flushing, NY 11355, and now residing at 140-22 45th Ave, 2nd Fl, Flushing, NY 11355.

6       Defendant City of New York: The City of New York ("City") is a municipal corporation organized under the laws of the State of New York. The New York City Police Department (NYPD) is an agency of the City of New York. The City, through the NYPD, is responsible for the hiring, training, supervision, and conduct of its police officers. At all relevant times, NYPD officers involved in the events described below were employees of the City of New York acting within the scope of their employment and under color of state law. The City of New York is a proper defendant for the federal claims under 42 U.S.C. § 1983 (to the extent that the officers' actions were taken pursuant to municipal policy or due to a failure to train or supervise) and for the state-law claims under principles of *respondeat superior*.

7       Defendant Flushing Hospital Medical Center ("Flushing Hospital") is a hospital and medical facility located at 4500 Parsons Boulevard in Flushing, Queens, New York. Flushing Hospital is a not-for-profit medical provider licensed in New York State and is capable of suing or being sued in its own name. At all relevant times, Flushing Hospital, through its doctors, nurses, and other staff, provided medical services to Plaintiff. Flushing Hospital and its employees were responsible for treating Plaintiff in accordance with accepted medical standards and for maintaining the confidentiality of Plaintiff's medical information.

8       Defendant Dajin Realty, Inc. is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located at 132-31 41st Ave,

2

Basement, Flushing, Queens County, NY 11355. It owns and operates the multi-unit residential property at 132-31 41st Avenue, Flushing, NY 11355.

9       Plaintiff also brings this action against NYPD Officers John Doe 1-5, the true names and badge numbers of whom are presently unknown to Plaintiff. These "John Doe" Defendants are the individual NYPD officers who, acting under color of state law, participated in the unlawful entry, false arrest, malicious prosecution, use of excessive force, and failure to intervene as described herein. Plaintiff will amend this Complaint to state their true names and capacities upon ascertaining them through discovery.

## STATEMENT OF FACTS

*Landlord Refuses Judgment Payment and Illegally Evicts Tenants*

10      Since January 2013, Plaintiff Changhe Cheng and his friends and family have maintained lawful tenancy at 13231 41 Avenue, FL2, Flushing, NY 11355. Throughout this period, Plaintiff has consistently fulfilled his tenancy obligations. Dispute erupted in 2019, for full context, please refer to the fully briefed appeal.

11      On March 6, 2024, at 9:30 AM, when a City Marshal arrived to execute an eviction warrant, Plaintiff attempted to tender a cashier's check for $68,963.00, representing the full judgment amount. The landlord once again refused to accept the payment and discarded the check on the ground, an act that was captured on video. The cashier's check was provided by Aixiang Kong, a recent tenant, on behalf of her ex-husband. The Marshal, asserting that the landlord's refusal to accept the full judgment amount and their insistence on proceeding with the eviction was in direct violation of the relevant laws, promptly left the scene within 15 minutes without evicting the tenants or removing their belongings.

3

12      In the absence of law enforcement officers, the Landlord, through its agents, persisted in an illegal lockout by changing the locks to the second and third floors, as well as the main entrance. During this chaotic event, Plaintiff was pursued and pushed by the Landlord's personnel. In a subsequent dispute with the locksmith hired by the tenants, the locksmith, in an act of retaliation, deliberately slammed a half-open door on Plaintiff's hand as it rested on the doorframe. This act crushed Plaintiff's hand, directly causing a severe fracture to a finger on his right hand. The fracture was confirmed by an X-ray at the hospital later that evening, and Plaintiff immediately sent a protest to the Landlord's manager, holding the Landlord responsible for the injury caused during the illegal eviction process they initiated.

13      On March 11, at approximately 4:00 PM, the landlord's representative signed for the bank cashier's check in the presence of the mail carrier and subsequently cashed it several days later. Following this, tenant Changhe Cheng sent a message (evidence) to the landlord's manager demanding the prompt delivery of the replacement door keys. When a group of tenants arrived at the second-floor hallway, they discovered the main door was still securely locked. The tenants immediately called the police and a locksmith for service. Subsequently, the landlord and the landlord's manager also called the police, filing a false report that the tenants were attempting to break in illegally.

*Police Response and Arrests at the Property*

14      In response to the calls, officers from the NYPD's 109th Precinct arrived at the property but initially took no action. The plaintiff, with the locksmith's help, gained lawful entry to their residence and began preparing a meal. Suddenly, approximately five police officers burst into the apartment without permission or a warrant. After over an hour of repeated inquiries, discussion and verification of the evidence presented by plaintiff, the police decided to arrest Plaintiff and his family, forcibly pushing them out of their home.

4

15    During the arrest, the officers used excessive and malicious force. Despite Changhe

Cheng's desperate plea, "I cannot walk far," a Korean police officer forcibly seized the cane

from the disabled elderly man and threw it into a trash can in the corner of the hallway. This act

caused further injury to Mr. Cheng's already fractured finger and subjected him to excruciating

pain. Simultaneously, an African-American officer and a White officer assaulted the severely

disabled elderly woman, Aixiang Kong, who was trapped in her wheelchair in the narrow space

between the inner and outer doors, causing her bone fracture and screaming in pain. Only after

the protest of her caregiver, Lingxi Kong, did the police abandon the arrest of Ms. Kong, who

subsequently received medical examinations and long-term physical therapy.

16    Before making any arrests, the police officers listened as the tenants explained the

situation. The tenants, who were not yet in handcuffs, presented the officers with: a) Multiple

forms of documentation showing Plaintiff's long-term tenancy at the premises, including original

and renewal lease agreements; b) The bank-certified check fully satisfying the judgment; c)

Clear video evidence showing the landlord's acceptance and signing for this payment earlier that

day; and d) Physical evidence that his personal belongings remained in the apartment and that no

lawful eviction had been completed by a City Marshal. Despite this clear and comprehensive

evidence negating probable cause, the officers refused to act, stating that the decision to release

or arrest depended entirely on their supervisor's determination after a consultation with legal

counsel.

17    Despite this clear and comprehensive evidence negating probable cause for arrest,

officers still placed Plaintiff, his son Lingxi Kong, and Plaintiff's ex-wife Aixiang Kong in

handcuffs while consulting with their supervisor for over an hour. During this extended period,

Plaintiff and his son provided a detailed chronological explanation of the entire situation since

5

2019. Officers took away the documents and repeatedly stated that the decision to release or arrest solely depended on their supervisor's determination after consultation with legal counsel.

18      Around 8:00 PM, officers received a phone call and, without providing any explanation for disregarding the presented evidence, proceeded to arrest Plaintiff and Lingxi Kong. It was only later that Plaintiff learned he was being charged with Criminal Trespass in the Second Degree. Upon information and belief, this specific charge was deliberately and fraudulently chosen to create a misleading narrative that the encounter occurred in a common area or yard, thereby concealing the officers' own, more serious crime of unlawfully entering a private dwelling while residents were present. The charge was a pretext designed to cover up the fact that the police themselves were the initial and primary trespassers.

*Detention and Medical Treatment at Precinct and Hospital*

19      On the evening of March 11, around 10 PM, Mr. Cheng, who was being detained in a small cell at the 109th Precinct, repeatedly protested, stating, "I have a lease and just paid $70,000. How did I become an invader of my own residence?" However, his pleas were ignored. He repeatedly emphasized that he was a disabled person requiring home care, unable to stand, and suffering from severe finger pain that necessitated hospital treatment. Through Lingxi Kong's negotiation, he was eventually sent to Flushing Hospital by the 109th Precinct, accompanied by a Korean police officer.

20      Upon examination, Mr. Cheng's blood pressure was found to be over 200, and X-rays revealed new injuries. As the landlord had prevented him from returning home to retrieve his medication, his prostate was swollen and painful, his bladder was swollen, and he couldn't urinate normally. Despite his repeated requests to police officers and passing doctors for medication to lower his blood pressure and alleviate pain, he was denied. He watched helplessly

6

as the clock on the wall ticked mercilessly, enduring nearly an hour of agony before a nurse finally brought medication.

21      The White police officer who replaced the Korean officer coerced medical staff at Flushing Hospital into prematurely discharging Plaintiff, and the hospital staff unethically complied with this coercion to assist the officer. Despite Plaintiff's documented and dangerously high blood pressure of 191 and his inability to walk, police, with the hospital's active cooperation, forcibly removed him from his hospital bed and returned him to the small cell at the 109th Precinct. He was deprived of the treatment a prisoner of war should receive under the 1949 Geneva Conventions. This was done to conceal the police misconduct and the severity of Plaintiff's condition. The White officer then abruptly demanded Mr. Cheng's medical records, which he refused, concealing them between his socks and the sole of his foot. After a fruitless search, a Chinese-speaking officer instructed Mr. Cheng to hold on so he could see a judge soon.

*Transportation and Treatment at Detention Center*

22      The White officer then handcuffed Mr. Cheng's hands behind his back extremely tightly and chained this elderly man with a fractured finger together with five others on a short iron chain, making it impossible to move or sit together. During the ride, Mr. Cheng's entire wrist and fingers gradually went numb, losing the sensation of pain. After being registered and photographed at the detention center (evidence: first detention form), he was nearly unable to stand due to dizziness. The detention center doctor asked him to read a paper with rules, but he couldn't see clearly. He kept tapping the table with his numb hands, indicating he had no sensation of pain and couldn't answer the level of pain. As he failed to pass checks like blood pressure measurement, he was sent back for medical treatment.

23      The White officer, visibly angry, roughly handcuffed Mr. Cheng extremely tightly again and pushed him forcefully. Instead of taking him to the hospital, the officer took him directly

7

back to the 109th Precinct. Mr. Cheng realized they were searching for the first medical record
he had refused to hand over, as it proved the police had failed to provide him with proper
treatment worse than a prisoner of war and were suspected of abuse. Only after repeated fruitless
searches did the White officer handcuff Mr. Cheng and send him back to Flushing Hospital once
more.

24      Upon return to Flushing Hospital under police escort, Mr. Cheng faced a pattern of
unprofessional treatment from medical staff. The attending physician, after consulting with the
White officer, criticized Mr. Cheng rather than addressing his medical needs, stating that his
issues required a judge's intervention rather than hospitalization.

25      Mr. Cheng had gone approximately 46 hours without food, from 5 PM on the 10th until
the early morning of the 12th. Despite repeatedly expressing his severe hunger and need for
nourishment, medical staff responded with sarcasm and dismissive comments, stating that only
medication could be provided. However, the hospital failed to provide either food or medicine.

26      The situation became critical when Mr. Cheng showed clear signs of severe dehydration,
with white corners appearing around his mouth and difficulty speaking. Only then did a nurse
provide two thin slices of bread with butter. In his weakened state, Mr. Cheng began choking
while attempting to eat, unable to swallow properly and struggling to breathe. Throughout this
medical emergency, both the medical staff and the White officer displayed deliberate
indifference, with the officer notably occupied with his phone while Mr. Cheng struggled for
breath.

27      The medical staff's conduct was characterized by inappropriate comments about Mr.
Cheng's condition in front of law enforcement officers, deliberate delays in providing water
despite obvious dehydration, and a general disregard for his urgent medical needs. Despite Mr.

8

Cheng's pleas for humane treatment and warnings about his deteriorating condition, his requests were largely ignored, potentially putting his life at risk.

28      Realizing he had to survive, Mr. Cheng waited an unknown amount of time until someone brought water. He only drank a little to guard against choking to death. At this point, two more officers appeared briefly and disappeared, instead of immediately replacing the discriminative White officer.  Mr. Cheng quickly deduced that the officers believed the medical records he had hidden couldn't be found after multiple searches and might have been flushed down the toilet. So they went behind his back to find the doctor and secretly made a copy of his first medical record, then found an opportunity to quietly return it to him at the last moment.

29      During this second hospital visit, multiple serious violations of patient privacy and medical ethics occurred: a) Hospital staff unlawfully disclosed Plaintiff's confidential medical information to police officers without obtaining required consent or authorization; b) Officers were permitted unauthorized access to examine and copy medical records without patient notification or approval; c) Staff failed to document numerous obvious signs of physical distress and injury, particularly those related to law enforcement restraint; d) Medical personnel omitted key information about the cause and nature of injuries from official records; e) Hospital staff engaged in inappropriate discussions about Plaintiff's medical condition with law enforcement personnel; f) Plaintiff was discharged prematurely for the second time despite documented serious medical concerns and without proper discharge protocols being followed.

### Continued Mistreatment at Precinct

30      Around noon on March 12, Mr. Cheng was returned to a holding cell at the 109th Precinct in a severely weakened state, having been deprived of food for approximately 46 hours. His physical condition had deteriorated significantly, manifesting in dizziness, severe abdominal pain, sustained muscle spasms, and continuous dry heaving. The situation was exacerbated by a

9

non-functional water faucet in the cell, leaving him without access to drinking water. His desperate attempts to find alternative water sources, including considering the cell's toilet, proved unsuccessful.

31      During a cell check, a female officer demonstrated notable indifference to Mr. Cheng's serious medical situation. When he reported his prolonged food deprivation, she responded dismissively, asking if he had money. Despite Mr. Cheng confirming he had $100 in his possession and requesting assistance with ordering food, the officer engaged in deceptive behavior - pretending to take out her phone to help before walking away without taking any action. This interaction reflected a broader pattern of intentional disregard for proper detention protocols and basic humanitarian care.

32      Relief came only around 4 PM when several newly arrested Chinese detainees also demanded food. At this point, Mr. Cheng finally received a portion of food and a small cup of water, though the amount was insufficient given his severe state of deprivation.

33      Around 6 PM, as Mr. Cheng was being transferred from the 109th Precinct back to the detention center, officers placed a set of documents into his pocket while he was still handcuffed. After he was placed into a holding cell at the detention center, he was able to inspect the papers. He discovered that among them was the very medical record the police had illicitly obtained from the hospital—the official copy bearing his signature. This was the document he had seen the police trying to find, which they likely presumed he had flushed down a toilet.

*Medical Records and Documentation Issues*

34      During Mr. Cheng's court appearance on March 12, 2024, the prosecution, relying on information from the arresting officers, withheld critical exculpatory information from the judge. Most significantly, the court was never informed that Plaintiff had tendered, and the Landlord had accepted, full payment of the $68,963 judgment just hours before the arrest. The judge,

10

noting a recent pattern of criminal cases arising from landlord-tenant civil disputes, declined to issue a protective order against Mr. Cheng.

35      A subsequent, careful comparison of the medical records in Plaintiff's possession provides irrefutable proof of a coordinated conspiracy between Flushing Hospital and the police. Plaintiff retained the original, unsigned patient copy of his first medical record, which he had hidden in his shoe. The second version—the official, signed copy from the hospital's file—was the one police surreptitiously obtained and later slipped into his pocket. The discrepancy between the unsigned patient copy and the signed official copy is direct evidence that hospital staff colluded with police, allowing them to illicitly copy the confidential record after it was signed and without Plaintiff's consent. To preserve this chain of evidence, Plaintiff deliberately did not request his own records from the hospital, ensuring that the only way he could possess the signed, official copy was through the police's illegal actions. This was further confirmed when a later formal request for records yielded only a disc of old, irrelevant X-rays, not the treatment notes from the incident, evidencing a continued effort to conceal their joint misconduct.

*Aftermath and Ongoing Medical Issues*

36      The incident resulted in severe and ongoing health consequences. On March 13, Mr. Cheng experienced total physical exhaustion and debilitating pain, requiring complete bed rest. Beginning March 14, he sought treatment from a rehabilitation doctor for nerve damage in his left wrist and thumb, caused by the excessively tight handcuffs. Despite completing over ten acupuncture sessions and forty physical therapy sessions, he continues to experience persistent numbness and limited mobility. His fingers are now permanently deformed and cannot be restored to their original state. Medical professionals have confirmed the permanent nature of the nerve damage and deformity.

11

37      The case concluded favorably for Mr. Cheng when all criminal charges were dismissed

on June 18, 2024. Subsequently, a notice of claim was filed with the Comptroller's Office on July

3, 2024, and a 50-H hearing was conducted on October 11, 2024, satisfying jurisdictional

requirements.

## CAUSES OF ACTION

### *-- CLAIMS AGAINST DEFENDANT CITY OF NEW YORK AND JOHN DOE OFFICERS -*
### COUNT I: UNLAWFUL ENTRY UNDER 42 U.S.C. § 1983

*(Against Defendants NYPD Officers John Does 1-5)*

38      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

39      The Fourth Amendment to the United States Constitution protects individuals from

unreasonable searches, and its protections are at their highest when a person is inside their own

home.

40      On March 11, 2024, Defendants NYPD Officers John Does 1-5, acting under color of

state law, unlawfully entered Plaintiff's private residence at 13231 41 Avenue without a warrant,

without consent, and without any exigent circumstances that would justify a warrantless entry.

41      This unconstitutional intrusion occurred before any arrest was made and constituted an

independent violation of Plaintiff's clearly established constitutional rights. The officers'

subsequent decision to arrest Plaintiff was, upon information and belief, motivated in part to

retroactively justify their own prior illegal entry.

42      As a direct result of this unlawful entry, Plaintiff suffered a profound violation of his

privacy and security, as well as fear, humiliation, and emotional distress.

# COUNT II: FALSE ARREST / UNLAWFUL SEIZURE UNDER 42 U.S.C. § 1983

*(Against Defendants NYPD Officers John Does 1-5)*

43     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

44     Defendants NYPD Officers John Does 1-5, acting under color of state law, subjected Plaintiff to an unreasonable seizure in violation of the Fourth and Fourteenth Amendments by arresting and detaining him without a warrant or probable cause.

45     The absence of probable cause was absolute and undeniable. Prior to making any arrest, during a period of calm negotiation, the officers were presented with irrefutable documentary and video evidence establishing Plaintiff's lawful right to occupy the premises. Their decision to arrest Plaintiff for trespassing was made in deliberate and conscious disregard of this dispositive evidence, only after receiving instruction from a supervisor.

46     No objectively reasonable police officer could have believed that probable cause existed to make an arrest. The actions of Defendants John Does 1-5 were therefore objectively unreasonable and are not protected by qualified immunity.

47     As a direct result of this unlawful arrest, Plaintiff was deprived of his liberty, suffered physical injury, and endured humiliation and emotional distress.

# COUNT III: EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

*(Against Defendants NYPD Officers John Does 1-5)*

48     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

49     In the course of arresting Plaintiff, Defendants NYPD Officers John Does 1-5 used a degree of force that was objectively unreasonable and excessive in violation of the Fourth and Fourteenth Amendments.

50      The use of force was objectively unreasonable because it was directed at a non-violent, non-resisting, elderly, and disabled individual. Specifically, the officers (a) forcibly seized Plaintiff's medical cane, (b) applied handcuffs with excessive tightness onto his known fractured finger, causing extreme pain and permanent nerve damage, and (c) chained him to other detainees on a short chain, making movement impossible and exacerbating his injuries.

51      No reasonable officer would believe that such force was necessary or lawful when applied to a compliant, elderly individual with known physical vulnerabilities.

52      As a direct result of this excessive force, Plaintiff suffered excruciating pain and sustained severe, permanent physical injuries, including the deformity of his fingers.

# COUNT IV: FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983

*(Against Defendants NYPD Officers John Does 1-5)*

53      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

54      It is clearly established law that a police officer has an affirmative duty to intervene to protect the constitutional rights of a citizen from infringement by other officers in their presence.

55      On March 11, 2024, multiple Defendants from the group of John Does 1-5 were present and observed other officers commit unconstitutional acts, including but not limited to: (a) unlawfully entering Plaintiff's home; (b) using excessive force against Plaintiff; and (c) assaulting the disabled, elderly woman Aixiang Kong.

56      Each officer who was present and had a realistic opportunity to intervene but failed to do so is liable for the harm that they could have prevented.

57      As a direct result of the officers' failure to intervene, Plaintiff suffered unlawful entry, false arrest, and excessive force, resulting in physical injury, permanent deformity, and severe emotional distress.

14

## COUNT V: MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

*(Against Defendants NYPD Officers John Does 1-5)*

58      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

59      After unlawfully arresting Plaintiff, Defendants NYPD Officers John Does 1-5 initiated a
criminal proceeding against him by filing a criminal complaint containing false allegations,
thereby violating his rights under the Fourth and Fourteenth Amendments.

60      This proceeding was initiated without probable cause and with actual malice. The
officers' malice is evidenced by their decision to pursue criminal charges against Plaintiff for
trespassing in order to conceal and retroactively justify their own prior unlawful, warrantless
entry into his home.

61      The proceeding was terminated in Plaintiff's favor on June 18, 2024, when all charges
were dismissed.

62      As a direct result of this malicious prosecution, Plaintiff was forced to endure the anxiety
and stigma of a criminal proceeding, appear in court, and suffer a continued deprivation of
liberty.

## COUNT VI: MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
## (Monell Claim)

*(Against Defendant City of New York)*

63      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

64      The unconstitutional acts of the John Doe officers described above were the direct result
of the official policies and customs of the Defendant City of New York.

65      First, the decision to arrest Plaintiff was an officially sanctioned action. The arresting
officers, faced with dispositive exculpatory evidence, explicitly stated that they would not act

15

until they consulted with and received approval from an NYPD supervisor. This deliberate, high-level decision to proceed with a baseless arrest constitutes an official, ad hoc policy decision by an authorized municipal policymaker, making the City directly liable.

66      Second, the City of New York is liable for maintaining widespread and persistent customs that were the moving force behind the violations, including: (a) the systematic practice of making baseless criminal arrests to resolve civil landlord-tenant disputes; (b) the systematic failure of officers to intervene to prevent constitutional violations by their peers; and (c) the systematic failure to provide adequate food, water, and medical care to detainees.

67      The City has demonstrated deliberate indifference to the constitutional rights of its citizens by failing to adequately train, supervise, or discipline its officers regarding these known, recurring problems, thereby ratifying the misconduct.

## --- CLAIMS AGAINST DEFENDANT FLUSHING HOSPITAL ---
## COUNT VII: VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

68      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

69      At all relevant times, Defendant Flushing Hospital, though a private entity, was acting under color of state law by virtue of its joint action and willful participation in a conspiracy with officers of the NYPD. The hospital and its staff abandoned their role as independent medical providers and instead became willful participants in the police's unconstitutional mistreatment of the Plaintiff while he was a pre-trial detainee.

70      This joint action is evidenced by, among other things: (a) the hospital staff's compliance with police coercion to prematurely discharge Plaintiff while he was medically unstable; (b) the staff's active collusion with police to illicitly copy and provide them with Plaintiff's confidential,

16

signed medical record to conceal police misconduct; and (c) the staff's overall pattern of prioritizing the goals of law enforcement over their medical duties.

71      By engaging in this joint action, Defendant Flushing Hospital acted with deliberate indifference to Plaintiff's serious medical needs, in violation of his rights under the Fourteenth Amendment.

72      As a direct result of Defendant Flushing Hospital's unconstitutional conduct, Plaintiff was denied necessary medical care, suffered a worsening of his physical injuries, including permanent nerve damage, and endured extreme pain and suffering.

## COUNT VIII: MEDICAL MALPRACTICE

73      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

74      Defendant Flushing Hospital, by and through its staff, owed Plaintiff a duty to provide medical care that complied with good and accepted standards of medical practice in New York.

75      Flushing Hospital repeatedly and egregiously breached this duty. These departures from the standard of care include, but are not limited to: (a) deliberately withholding food and water for approximately 46 hours; (b) providing food that presented a choking hazard and then displaying deliberate indifference while Plaintiff choked; (c) failing to administer necessary medication for Plaintiff's documented, dangerously high blood pressure; and (d) twice discharging Plaintiff prematurely while he was medically unstable, at the behest of police.

76      These acts and omissions were a direct and proximate cause of the exacerbation of Plaintiff's injuries, his permanent nerve damage, and his extreme pain and suffering.

## COUNT IX: BREACH OF FIDUCIARY DUTY

77      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

17

78      As Plaintiff's medical provider, Defendant Flushing Hospital owed him fiduciary duties of loyalty and confidentiality.

79      Flushing Hospital intentionally breached these duties by actively colluding with law enforcement. This breach is proven by the irrefutable physical evidence of the two different medical records: the unsigned patient copy he secured, and the signed official copy police illicitly obtained and later returned to him. This discrepancy is direct proof that hospital staff, without Plaintiff's consent, unlawfully copied and shared the confidential record with police after it was signed.

80      This act of bad faith, combined with allowing police to dictate medical decisions, constitutes a profound betrayal of the patient-provider relationship and a violation of the hospital's duty of loyalty.

81      As a direct result of this breach, Plaintiff suffered severe emotional and dignitary harm from the violation of his privacy, and his physical injuries were worsened.

### --- *CLAIMS AGAINST DEFENDANT DAJIN REALTY, INC.* ---
## COUNT X: WRONGFUL AND FORCIBLE EVICTION (RPAPL § 853)

82      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

83      Pursuant to New York Real Property Actions and Proceedings Law § 853, a tenant who is unlawfully ejected from real property in a forcible or unlawful manner may recover treble damages.

84      On March 6, 2024, Defendant Dajin Realty engaged in an unlawful eviction by using "self-help" to change the locks to Plaintiff's residence without a lawfully executed warrant of eviction. This conduct was also "forcible," as its agents physically pushed and shoved Plaintiff during the illegal lockout, causing him to suffer a fractured finger.

18

85      As a direct result of the Landlord's unlawful and forcible conduct, Plaintiff was deprived of his home, suffered physical injury, and is entitled to recover three times the amount of his actual damages.

## COUNT XI: MALICIOUS PROSECUTION

86      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

87      Defendant Dajin Realty initiated a criminal proceeding against Plaintiff by intentionally making a false report to the NYPD on March 11, 2024, for the purpose of having him arrested.

88      The Landlord acted without probable cause and with actual malice, as it made the false trespass report after a City Marshal had refused to execute the eviction and after its representative had signed for and accepted a bank check for the full judgment amount.

89      The criminal proceeding terminated entirely in Plaintiff's favor on June 18, 2024. As a direct result of the Landlord's malicious acts, Plaintiff was arrested, jailed, injured, and humiliated, and is entitled to compensatory and punitive damages.

## COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

90      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

91      The totality of Defendant Dajin Realty's conduct constitutes a campaign of harassment that was so extreme and outrageous as to transcend the bounds of all decency. This campaign included the illegal lockout of an elderly, disabled tenant, followed by the malicious filing of a false police report designed to have him wrongfully arrested.

92      The Landlord acted intentionally and with a reckless disregard of the substantial probability that this outrageous conduct would cause Plaintiff to suffer severe emotional distress.

93      As a direct and proximate result, Plaintiff suffered severe emotional distress, including terror, anxiety, and humiliation.

## COUNT XIII: PRIMA FACIE TORT

94      Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

95      Defendant Dajin Realty inflicted intentional harm upon the Plaintiff, resulting in special damages, without any excuse or justification, by a series of acts that constitute a malicious and disinterested campaign of harassment.

96      The Landlord's sole motivation for its actions—including making a false police report after having already accepted full payment for the judgment—was "disinterested malevolence," meaning the Landlord intended to inflict harm for the sake of inflicting harm, beyond any legitimate purpose.

97      As a direct result of this intentional and malicious campaign, Plaintiff suffered specific, quantifiable special damages, including but not limited to the costs of hiring a locksmith and medical treatment.

## PRAYER FOR RELIEF

98      WHEREFORE, Plaintiff Changhe Cheng respectfully requests that this Court enter a judgment in his favor and against all Defendants, jointly and severally as applicable, for the following relief:

    a)  An award of Compensatory Damages in an amount not less than Ten Million Dollars ($10,000,000) for Plaintiff's physical injuries, permanent deformity, pain and suffering, emotional distress, and the violation of his constitutional rights;

    b)  An award of Punitive Damages in an amount to be determined at trial against the individual John Doe Defendants, Defendant Flushing Hospital, and Defendant Dajin

Realty, Inc., sufficient to punish their malicious and willful conduct and to deter such conduct in the future;

c) An award of Treble Damages against Defendant Dajin Realty, Inc. pursuant to New York RPAPL § 853;

d) A Declaratory Judgment that Defendants' acts violated Plaintiff's rights under the Constitution and laws of the United States and the State of New York; and

e) Any other relief the Court deems just and proper.

*Changhe Cheng*

Respectfully submitted,                    /s/ Changhe Cheng (*Pro Se*)
Dated: June 9, 2025                         140-22 45th Ave, FL2, Flushing, NY 11355
Flushing, New York                          Phone: 212-222-6688 | Email: lingxi@gmail.com

21

# United States District Court
## Eastern District of New York

| | | |
|---|---|---|
| Changhe Cheng, | *Plaintiff,* | |
|     *-against-* | | No. |
| Flushing Hospital and Medical Center, City of New York, Dajin Realty, Inc. and NYPD Officers John Does 1-5, | *Defendants.* | |

## NOTICE OF MOTION TO PROCEED IN FORMA PAUPERIS

PLEASE TAKE NOTICE, that upon the annexed Affidavit of Changhe Cheng (Form AO-239), dated June 9, 2025, and the accompanying Complaint, Plaintiff Changhe Cheng will move this Court at the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, at the earliest convenience of the Court, for an Order pursuant to 28 U.S.C. § 1915 granting Plaintiff leave to proceed in this action in forma pauperis, without the prepayment of the filing fee or other costs.

The grounds for this motion are that Plaintiff is unable to afford the cost of commencing this action, as detailed in the attached financial application, and that the action is brought in good faith.

Dated: June 9, 2025
Flushing, New York

Respectfully submitted,
/s/ Changhe Cheng (*Pro Se*)
140-22 45th Ave, FL2, Flushing, NY 11355
Phone: 212-222-6688
Email: lingxi@gmail.com

Revised 02.13.2025; Effective 02.17.2025

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Changhe Cheng

**DEFENDANTS**

Flushing Hospital and Medical Center, City of New York, Dajin Realty, Inc., NYPD Officers John Does 1-5

**(b)** County of Residence of First Listed Plaintiff    Queens
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Queens
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Changhe Cheng (Pro Se)
140-22 45th Ave, Fl2, Flushing, NY 11355; 212-222-6688

Attorneys *(If Known)*

ARSHACK, HAJEK & LEHRMAN PLLC.
1790 Broadway, Suite 1501, 5 Columbus Circle,
New York, NY 10019 (212) 582-6500

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [x] 362 Personal Injury - Medical Malpractice | | [ ] 720 Labor/Management Relations | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 740 Railway Labor Act | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 751 Family and Medical Leave Act | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | **IMMIGRATION** | |
| | | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | |
| | | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | |

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g))

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
FALSE ARREST / UNLAWFUL SEIZURE, MALICIOUS PROSECUTION, MEDICAL MALPRACTICE, WRONGFUL AND FORCIBLE EVICTION, etc

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
10 Million

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE    June 9, 2025

SIGNATURE OF ATTORNEY OF RECORD    *Changhe Cheng*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _Changhe Cheng_____, counsel for _Changhe Cheng_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑ monetary damages sought are in excess of $150,000.00 exclusive of interest and costs,

☐ the complaint seeks injunctive relief, or

☐ the matter is otherwise ineligible for the following reason:

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks. Add an additional page if needed.

N/A

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 3 in Section VIII on the front of this form. Rule 3(a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 3(a) provides that "A civil case shall not be deemed "related" to another civil case merely because the civil case involves identical legal issues, or the same parties." Rule 3 further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (b), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NEW YORK EASTERN DISTRICT DIVISION OF BUSINESS RULE 1(d)(3)

*If you answer "Yes" to any of the questions below, this case will be designated as a Central Islip case and you must select Office Code 2.*

1. Is the action being removed from a state court that is located in Nassau or Suffolk County? ☐ Yes ☑ No

2. Is the action—not involving real property—being brought against United States, its officers or its employees AND the majority of the plaintiffs reside in Nassau or Suffolk County? ☐ Yes ☑ No

3. If you answered "No" to all parts of Questions 1 and 2:
   a. Did a substantial part of the events or omissions giving rise to claim or claims occur in Nassau or Suffolk County? ☐ Yes ☑ No
   b. Do the majority of defendants reside in Nassau or Suffolk County? ☐ Yes ☑ No
   c. Is a substantial amount of any property at issue located in Nassau or Suffolk County? ☐ Yes ☑ No

4. If this is a Fair Debt Collection Practice Act case, was the offending communication received in either Nassau or Suffolk County? ☐ Yes ☑ No

*(Note, a natural person is considered to reside in the county in which that person is domiciled; an entity is considered a resident of the county that is either its principal place of business or headquarters, of if there is no such county in the Eastern District, the county within the District with which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes ☑ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes (If yes, please explain) ☑ No

I certify the accuracy of all information provided above.

Signature: _____

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| Changhe Cheng | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Flushing Hospital and Medical Center, | ) | |
| City of New York, Dajin Realty, Inc., and NYPD | ) | |
| Officers John Does 1-5 | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   City of New York
The Corporation Counsel's Office
100 Church Street,
New York, NY 10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Changhe Cheng
140-22 45th Ave, Fl2, Flushing, NY 11355

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date:  **06/09/2025**         _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                     _____
                                              *Printed name and title*


                                     _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of New York

| | | |
|---|---|---|
| Changhe Cheng | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| Flushing Hospital and Medical Center, | ) | |
| City of New York, Dajin Realty, Inc., and NYPD | ) | |
| Officers John Does 1-5 | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  NYPD Officers John Does 1-5
(Identities to be ascertained from Defendant City of New York)
c/o New York City Law Department
100 Church Street
New York, NY 10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Changhe Cheng
140-22 45th Ave, Fl2, Flushing, NY 11355

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date:  **06/09/2025**    _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                            *Server's signature*

                                         _____
                                            *Printed name and title*

                                         _____
                                            *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

| | |
|---|---|
| Changhe Cheng <br><br> *Plaintiff(s)* <br><br> v. <br><br> Flushing Hospital and Medical Center, <br> City of New York, Dajin Realty, Inc., and NYPD <br> Officers John Does 1-5 <br><br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Flushing Hospital and Medical Center
4500 Parsons Boulevard,
Flushing, NY 11355

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

            Changhe Cheng
            140-22 45th Ave, Fl2, Flushing, NY 11355

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: 06/09/2025

_____
                 *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .


I declare under penalty of perjury that this information is true.


Date: _____            _____

                                                *Server's signature*


                                 _____

                                                *Printed name and title*


                                 _____

                                                *Server's address*


Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| Changhe Cheng | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Flushing Hospital and Medical Center, | ) |
| City of New York, Dajin Realty, Inc., and NYPD | ) |
| Officers John Does 1-5 | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*        Dajin Realty, Inc.
132-31 41 Ave, Basement,
Flushing, NY 11355

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:        Changhe Cheng
140-22 45th Ave, Fl2, Flushing, NY 11355

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: **06/09/2025**        _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: